**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**BRIAN MEAD,**

       **Plaintiff,**

**v.**                                                              **CASE NO. 5:12-cv-325-MW/EMT**

**FRANK McKEITHEN, in his
official capacity as Sheriff of Bay
County, Florida; KENNETH
BIBBS, individually; TARA BIBBS,
individually; and DOUG PIERCE,
individually,**

       **Defendants.**

_____/

## <u>ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR SUMMARY JUDGMENT</u>

Before this Court is Defendants Frank McKeithen and Doug Pierce's motion

for summary judgment, ECF No. 58.[1]  *See* Fed. R. Civ. P. 56(a) ("The court shall

grant summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law.").  This

Court has reviewed the parties' papers and heard argument from counsel on

---

[1]     Kenneth and Tara Bibbs were initially named as defendants in Counts I and II but have
since been dismissed from this case, ECF Nos. 47; 53.  Therefore, Counts I and II brought solely
against the Bibbs have been dismissed, and only Counts III, IV, and V against Pierce and
McKeithen, in his official capacity as Sheriff of Bay County, remain to be addressed by this
Order.

October 31, 2013.[2]  For the reasons stated on the record and discussed below, the

motion is **granted in part and denied in part.**

    This case arises out of a dispute between neighbors Brian Mead, Kenneth

Bibbs, Tara Bibbs, and Doug Pierce on the evening of September 7, 2009.  Mead

and the Bibbs share a property line.  Mead's dogs attacked and killed one of the

Bibbs's dogs, and the Bibbs responded by shooting and killing Mead's dogs.

Pierce, a nearby neighbor and off-duty deputy sheriff, heard the gun shots and

came to the scene of the shooting.  Kenneth Bibbs was also a deputy sheriff and

off-duty at the time.  Mead was not present at the time of the shooting.  When

Mead arrived on the scene shortly thereafter, there was an altercation between

Mead and Pierce, the facts of which are disputed, that resulted in Mead's arrest for

an assault on a law enforcement officer.

    Pierce claims that when Mead arrived his vehicle was moving at a high rate

of speed and slid to a stop in Mead's front yard and that Mead hurriedly got out of

his vehicle with a large bulge in his front pocket.  Pierce claims that he was

concerned that the bulge might be a weapon and that violence might ensue due to

the highly emotional situation, and accordingly he approached Mead identifying

himself repeatedly as a law enforcement officer and instructing Mead to remove

---

[2]     This Order was prepared in November and should have been issued at that time.  This
Court regrets any inconvenience to the parties and acknowledges such a delay is unacceptable.
This is particularly so where, as here, this Court announced its decision on the record.

the item from his pocket.  Pierce then claims that Mead balled up his fist and acted

as if he was going to strike him at which time Pierce hit Mead in self-defense.

For his part, Mead claims that when he arrived home and was exiting his

vehicle that Pierce, in street clothes and smelling of alcohol, aggressively ran

towards him on his own property and grabbed him in an attempt to restrict his

movement prior or simultaneous to identifying himself as a law enforcement

officer.  Mead claims that Pierce only identified himself as a law enforcement

officer this single time and did not produce any identification despite repeated

requests.  Pierce does not dispute that he was dressed in street clothes, did not

produce identification, and had been drinking alcohol.  Mead claims that after

being frisked by Pierce he tried to elude Pierce at which time Pierce slung him to

the ground and punched him in the head.  Mead claims that at no point did he ball

up his fists or act aggressively toward Pierce and that the only instance in which

his hands could have mistakenly appeared to have been balled was when he was

getting up after already being slung down and hit by Pierce.[3]  In sum, the facts are

very much in dispute as to what occurred between Mead and Piece.

---

[3]       In responding to Mead's motion for summary judgment, Pierce states that "[t]o avoid a
potential dispute of material fact, Defendants accept [Mead's] claim that he did not ball up his
fists solely for purposes of this motion."  However, Pierce goes on to state that Mead
acknowledged that he balled up his fists at his deposition thus implying that even Mead
conceded at some point that he balled up his fists before Pierce struck him.  To the contrary, as
for the deposition pages cited by Pierce, Mead unequivocally stated that "[a]nd Pierce slung me
to the ground.  And then apparently when I got up, that's when my hands looked like they were
balled, when I got up off the ground."  ECF No. 58-12, pp. 29-30.

After on-duty deputies arrived on the scene in response to a 911 call from Mead's wife, Pierce prepared and signed a probable cause affidavit.[4]  On-duty deputies, not Pierce, made the arrest.  However, Pierce's probable cause affidavit was the sole basis for Mead's arrest.

## Count III

Mead brings Count III against Pierce and McKeithen, in his official capacity as Sheriff of Bay County, arguing that Pierce knowingly falsified facts to establish probable cause to secure his arrest in violation of the Fourth Amendment.

Pierce moves for summary judgment on Count III arguing that (i) he did not make the arrest; (ii) actual probable cause existed for the arrest; and (iii) at worst, arguable probable cause existed and he is entitled to qualified immunity.

Pierce's argument that he cannot be liable because he did not make the decision to arrest Mead or the arrest itself is meritless.  The law is well-settled that "falsifying facts to establish probable cause is patently unconstitutional."

---

[4]    Pierce claims that he was acting in his capacity as a law enforcement officer during the altercation but was only acting as a citizen witness, not in his capacity as a law enforcement officer, when he drafted the probable cause affidavit.  However, as noted on the record, the statement was given and signed by Pierce consistent with an affidavit having been executed by law enforcement, but not sworn and notarized as is consistent when a sworn statement is given by a citizen.  That is, Pierce signed the affidavit as "Investigator Doug Pierce," "LEO" ("law enforcement officer" with ID Number "105").  More importantly, the affidavit identifies "D. Pierce" as the "**Investigating Officer**."  ECF No. 58-2.  When asked at the hearing, counsel for Defendants conceded that, to the extent there is an issue regarding whether Pierce was acting under color of law when giving his statement, it is a mixed question of law and fact.  This Court finds there is a factual dispute as to whether Pierce was acting under color of law which must be resolved by the jury.

*Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004). *Accord Burge v. Ferguson*, No. 8:07-cv-2217, 2010 WL 2921613, at *2 (M.D. Fla. July 23, 2010) ("Both an arrest without probable cause (or at least 'arguable probable cause') and the falsification of facts to establish probable cause violate the Fourth Amendment.").

When a plaintiff claims an arrest resulted from falsified evidence provided by the defendant, the court considers whether the falsified evidence provided by the defendant was necessary to substantiate the probable cause for the plaintiff's arrest. If necessary, there was no probable cause for the arrest. Alternatively, if not necessary because probable cause for the arrest existed without regard to the falsified evidence, there is still probable cause for the arrest. *See, e.g., Fox v. Graff*, 276 F. App'x 936, 939 (11th Cir. 2008) ("The Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen if such false statements were necessary to the probable cause. A search warrant may be voided if the affidavit supporting the warrant contains deliberate falsity or reckless disregard for the truth, and this rule includes material omissions. However, a warrant is valid if, absent the misstatements or omissions, there remains sufficient content to support a finding of probable cause." (internal citations and quotations omitted)).

Assault on a law enforcement officer under Florida Statute § 784.07, the crime for which Mead was arrested, requires a finding that "[Mead] intentionally and unlawfully threatened, either by word or act, to do violence to [Pierce.]"  Fla. Std. Jury Instr. (Crim.) 8.10.

Here, in the probable cause affidavit, Pierce swore that "[t]he Defendant [read: Mead] approached your Affiant [read: Pierce] in a threatening manner balling up his fists to strike your Affiant.  Your [Affiant] then struck the Defendant to prevent him from striking your Affiant and to protect himself."  ECF No. 58-2. There are disputed issues of fact as to whether Mead slid his vehicle to a stop, hurriedly exited the vehicle, in any way aggressively approached Pierce, balled up his fists (prior to being slung down and hit by Pierce), or otherwise acted in a manner for Pierce to reasonably believe that Mead was intentionally and unlawfully threatening to do violence to him.  If the facts are accepted in the light most favorable to Mead as the non-movant, as this Court must, Pierce knowingly provided false statements to secure Mead's arrest.  This is particularly true where, as here, there is evidence from which the jury could reasonably infer that Pierce falsified the affidavit to protect his fellow deputy who had just brutally slain Mead's dogs.  In short, this Court finds that a jury could find that Pierce falsified facts to establish probable cause.

6

This, of course, does not end the inquiry.  This Court must next determine whether the falsified evidence was necessary to substantiate the probable cause for Mead's arrest.

In this case, as noted above, the only evidence considered for Mead's arrest, and thus the only evidence from which probable cause for the arrest could have been based, was Pierce's statement.  Therefore, Pierce's statement quoted above was necessary, and without the statement, there could not have been probable cause to arrest Mead for assault on a law enforcement officer because there would be no evidence to suggest that Mead intentionally and unlawfully threatened, either by word or act, to do violence to Pierce.  That is, there would be no probable cause– arguable or otherwise.

It is no answer that Pierce is entitled to qualified immunity because there is "arguable probable cause."  As noted, if the allegedly falsified statements are struck then there would be no arguable probable cause.  Moreover, there can be no question that it was clearly established law at the time of Mead's arrest that falsifying facts to establish probable cause was unconstitutional.  *See Kingsland*, 382 F.3d at 1232 ("[F]alsifying facts to establish probable cause is patently unconstitutional and has been long before Kingsland's arrest in 1995."); *Riley v. City of Montgomery*, 104 F.3d 1247, 1253 (11th Cir. 1997) ("It was well

established in 1989 that fabricating incriminating evidence violated constitutional rights.").

It is also no answer, as explained on the record, that an argument could be made that Mead could have been arrested for some other offense such as resisting arrest without violence.  The cases cited by Pierce are distinguishable.[5]  Those cases dealt with situations where the officers acted reasonably and had probable cause to arrest the suspects, just not for the particular offense for which they were actually arrested.  None involved deliberate misconduct.  Here, the allegation is that Pierce deliberately falsified material facts to secure Mead's arrest and did so to protect a fellow deputy.  The Eleventh Circuit has recognized such a factual distinction.  *See Kingsland*, 382 F.3d at 1233-34 ("[T]he type of conduct that the policies of qualified immunity seek to protect [is that where] the officials made a reasonable mistake in the legitimate performance of their duties, and there were no concerns regarding potential abuse of authority or motivation to make an arrest.  In contrast, . . . qualified immunity 'does not offer protection if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff.' . . .  The principles behind qualified immunity would be rendered meaningless if such

---

[5]      *See Devenpeck v. Alford*, 543 U.S. 146, 152-53 (2004); *Skop v. City of Atlanta*, 485 F.3d 1130, 1138 (11th Cir. 2007); *Bailey v. Bd. of County Com'rs of Alachua County*, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992).

immunity could be invoked to shelter officers who, because of their own interests, allegedly flout the law, abuse their authority, and deliberately imperil those they are employed to serve and protect."  (internal citations omitted)); *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997) ("[T]he qualified immunity standard is broad enough to cover some 'mistaken judgment,' and it shields from liability 'all but the plainly incompetent or those who knowingly violate the law.'"  (internal citation omitted)).

To accept Pierce's position would mean that an officer could deliberately falsify a probable cause affidavit because of a personal grudge and secure an arrest for the vilest of offenses such as capital sexual battery and avoid liability if it turns out, in hindsight, an argument could be made to support an arrest for an offense as such as simple trespass.  Such is not the law and, if it were, would serve only to confirm Mr. Bumble's observation that "the law is a ass - a idiot."

For these reasons, Pierce's motion as to Count III is denied.

Mead also brings Count III against McKeithen, in his official capacity as Sheriff of Bay County, for a violation of his Fourth Amendment rights because McKeithen was (i) deliberately indifferent to Pierce's conduct; (ii) failed to adequately train and supervise Pierce; and (iii) ratified Pierce's conduct after the fact.

Mead's claims of deliberate indifference and failure to train and supervise are intertwined and require McKeithen to have actual or constructive notice of the potential threat or risk posed by Pierce. *See Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) ("Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . A less stringent standard of fault for a failure-to-train claim would result in *de facto respondent superior* liability on municipalities. . . . A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." (internal citations and quotations omitted)); *Barr v. Gee*, 437 F. App'x 865, 874 (11th Cir. 2011) ("In order to establish deliberate indifference, the plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." (internal citation and quotation omitted)); *Maldonado v. Snead*, 168 F. App'x 373, 379 (11th Cir. 2006) ("[I]n order to establish deliberate indifference, plaintiffs must be able to allege (and prove at trial) that the defendant (1) was objectively aware of a risk of serious harm; (2) recklessly disregarded the risk of harm; and (3) this conduct was more than merely negligent." (internal citation and quotation omitted)). Mead has not offered any evidence to show that

McKeithen had actual or constructive notice of a particular problem with its training, supervision, or officers' misconduct, let alone a problem with Pierce.

For Mead's claim of ratification, Mead must show that McKeithen's alleged ratification caused the constitutional violation. *See Monell v. Dep't of Social Serv. of City of New York*, 436 U.S. 658, 691 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). Plaintiff's claim of ratification is based on McKeithen's alleged ratification of Pierce's conduct after the arrest had already occurred. As such, McKeithen's conduct after the arrest could in no way have caused the arrest from which this case arises. *See Garvie v. City of Ft. Walton Beach*, 366 F.3d 1186, 1189 (11th Cir. 2004) ("For plaintiffs to state a successful § 1983 claim against a municipality based on a ratification theory, . . . they must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis." (internal citation and quotation omitted)); *Thomas ex rel. Thomas v. Roberts*, 261 F.3d 1160, 1174-75 (11th Cir. 2001) ("Because the District had no opportunity to ratify the decision to search the children before the searches occurred, the students' reliance on *Praprotnik* to support their claim that the District ratified the unconstitutional conduct is misplaced."). Accordingly, McKeithen is entitled to summary judgment on Count III.

### Count IV

Mead brings Count IV against McKeithen, in his official capacity as Sheriff of Bay County, claiming under state law that McKeithen negligently supervised and trained "the individual defendants" (which were Pierce, Kenneth Bibbs, and Tara Bibbs at the time pled). Because Pierce and Kenneth Bibbs were deputy sheriffs, their supervision and training are what is at issue. This claim fails for the same reasons as Mead's claim against McKeithen in Count III. Mead has not offered any evidence that McKeithen had actual or constructive notice of a particular problem with its training, supervision, or officers' misconduct, let alone a problem with Pierce or Bibbs. Accordingly, McKeithen is entitled to summary judgment on Count IV.

### Count V

Lastly, Mead brings Count V against McKeithen, in his official capacity as Sheriff of Bay County, claiming under state law that McKeithen negligently retained Kenneth Bibbs. However, Mead has failed to show even a tenuous causal connection between McKeithen's retention of Bibbs and any harm he may have incurred. Bibbs's retention as a deputy is independent of his off-duty shooting of Mead's dogs which could have readily occurred regardless of Bibbs's job. Further, the subsequent altercation and arrest are not pled, or evidenced, to have involved

Bibbs in any way.  Therefore, this claim fails as well.  Accordingly, McKeithen is entitled to summary judgment on Count V.

For these reasons and those previously stated on the record,

**IT IS ORDERED:**

1.      Defendants' motion is **GRANTED in part and DENIED in part.**

2.      Summary judgment is **GRANTED** as to **McKeithen**, in his official capacity as Sheriff of Bay County, on **Counts III, IV, and V**.  These claims are **dismissed with prejudice**.  This Court does *not* direct entry of judgment under Federal Rule of Civil Procedure 54(b).

3.      Summary judgment is **DENIED** as to **Pierce on Count III.**  This is the sole remaining count and defendant in this case.

**SO ORDERED on January 24, 2014.**

**s/Mark E. Walker**
**United States District Judge**
